**ROBBINS & MYERS, INC., an Ohio corporation, Plaintiff,**

v.

**WINGER ASSOCIATES, INC., a Minnesota corporation, Defendant.**

No. 3–93 CIV 211.

United States District Court, D. Minnesota, Third Division.

Aug. 2, 1993.

Faegre & Benson by Steven L. Severson, Anne E. Kringel and Christine Graff, Minneapolis, MN, for plaintiff.

Popham, Haik, Schnobrich & Kaufman by William D. Hittler, Minneapolis, MN, for defendant.

### ORDER

ALSOP, Senior District Judge.

This matter came before the Court on June 24, 1993, on the plaintiff's motions for summary judgment and for an order staying arbitration. In this declaratory judgment action, Robbins & Myers, Inc. ("Robbins & Myers") asks the Court for a declaration that various claims asserted by Winger Associates, Inc. ("Winger") are not subject to arbitration.

## I. FACTUAL BACKGROUND

The plaintiff, Robbins & Myers, is the successor-in-interest to Prochem Mixing Equipment, Ltd. ("Prochem"), a manufacturer of "agitators and mixers" for the process industries. The defendant, Winger, is a sales and marketing representative for manufacturers of various processing equipment.

On June 10, 1991, Prochem and Winger entered into a "Contract for Exclusive Representation" (the "Contract"). Under the terms of the Contract, Prochem granted Winger the exclusive privilege to sell Prochem mixers, accessories, and parts in the "Upper Midwest" region. Winger agreed to solicit orders for Prochem products in return for a commission on all sales of Prochem products in its region. By its terms, the Contract "continue[d] in effect until thirty (30) days, or a shorter period if mutually agreed upon, after either party has received written notice of termination from the other."

During the term of the Contract, Winger received commissions on eleven sales of Prochem products. Ten of these eleven sales were made by Winger to "end users" of Prochem products. These buyers utilized the Prochem products in their own manufacturing operations. The remaining sale was not made by Winger. However, Winger received a commission on the sale because it occurred in the Upper Midwest region.

Between June of 1991 and March of 1993, Winger also pursued 143 sales "leads" on behalf of Prochem. Ninety-eight of these leads involved end users. The remaining forty-five leads involved customers that would have resold the Prochem product in some manner.[1]

In February of 1992, Robbins & Myers acquired Prochem's assets. On September 11, 1992, Robbins & Myers notified Winger

---

1. The example set forth in the affidavit of William Winger describes a company that would have incorporated the Prochem product as a component in its own product and then sold its own completed product—an "original equipment manufacturer." Winger describes these companies as acting in a "wholesale" capacity. At oral argument on these motions, counsel for Winger asserted that, in addition to these original equip- ment manufacturers, Winger also pursued leads with companies that would have resold Prochem products in the more traditional sense of the term "wholesalers," without incorporating them into their own product. Although this additional assertion was not properly set forth in an affidavit, the Court will accept it as true because it is not essential to the Court's resolution of these motions.

that it was discontinuing the Contract effective 30 days from the date of the letter. Winger responded by asserting that Robbins & Myers' actions violated the Termination of Sales Representative Act (the "Act"), Minn. Stat. § 325E.37, because Robbins & Myers had terminated the Contract without "good cause" and had failed to give Winger sufficient notice of the cancellation.

On March 11, 1993, Winger filed a Demand for Arbitration with the American Arbitration Association, asserting claims for wrongful termination of the Contract in violation of the Act and breach of the Contract. On April 2, 1993, Robbins & Myers filed this declaratory judgment action. In this motion, Robbins & Myers argues that it is entitled to summary judgment because, as a matter of law, the Act does not govern this dispute and therefore Winger's claims are not arbitrable.

## II. ANALYSIS

### A. The Summary Judgment Standard

■ The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or are based on undisputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hegg v. United States,* 817 F.2d 1328, 1331 (8th Cir. 1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Second, any dispute over material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

### B. The Determination of Arbitrability

Initially, the Court must determine if the issue of arbitrability should be decided by the Court or an arbitrator. Winger argues that Robbins & Myers' motions should be dismissed because this dispute is governed by Minnesota law and, under Minnesota law, the issue of arbitrability is initially determined by an arbitrator.

■ An agreement to arbitrate that affects interstate commerce is enforceable under the Federal Arbitration Act. *See* 9 U.S.C. § 2. Winger concedes that, under federal law, the issue of arbitrability is normally determined by the Court. *See AT & T Tech. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Winger argues, however, that the Federal Arbitration Act does not apply to this dispute because there is no underlying agreement to arbitrate. Therefore, the argument continues, the jurisdictional basis for this dispute is diversity of citizenship, and, under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), this Court is required to apply Minnesota state substantive law.

■ The Court finds it unnecessary to resolve the question of whether federal or state substantive law applies to the issue of arbitrability because in this case, even under Minnesota law, the issue of arbitrability is determined by the Court. Minnesota has adopted the Uniform Arbitration Act, which provides that

[o]n application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and

the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

Minn.Stat. § 572.09(b). Under Minnesota law, the issue of arbitrability is submitted to an arbitrator only when the dispute concerns the scope of an arbitration agreement. *See Duluth Police Local v. City of Duluth,* 466 N.W.2d 36, 39 (Minn.App.1991). Because the dispute in this case does not involve the scope of an arbitration agreement, the issue of arbitrability is properly before the Court.

### C. The Minnesota Termination of Sales Representatives Act

■ The Minnesota Termination of Sales Representatives Act governs when and under what conditions a manufacturer may terminate a "sales representative agreement." Minn.Stat. § 325E.37, subd. 2. Under the Act, a sales representative agreement cannot be terminated without good cause. *Id.* The Act also contains an arbitration provision, which provides for mandatory arbitration of any claims a manufacturer has under the Act. Minn.Stat. § 325E.37, subd. 5. Sales representatives may also arbitrate their claims under the Act, but they are also given the option of pursuing their claims "in a court of law." *Id.*

■ The Act defines a "sales representative agreement," in part, as "a contract or agreement ... between a sales representative and another person." Minn.Stat. § 325E.37, subd. 1(e). Subdivision 1(d) contains the following general definition of the term "sales representative" and four specific exclusions:

"Sales representative" means a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission.

Sales representative does not include a person who

(1) is an employee of the principal;

(2) places orders or purchases for the person's own account for resale;

(3) holds the goods on a consignment basis for the principal's account for resale; or

(4) distributes, sells, or offers the goods, other than samples, to end users, not for resale.

Minn.Stat. section 325E.37, subd. 1(d).

This dispute between Robbins & Myers and Winger is not subject to the arbitration provision of the Act unless the Contract was a sales representative agreement. The Contract was not a sales representative agreement unless Winger was a sales representative. If the Court accepts Winger's assertion that it solicited wholesale orders, then Winger meets the general definition of a sales representative. It is undisputed, however, that Winger sold and offered Prochem products "to end users, not for resale." Therefore, the fourth exclusion under subdivision 1(d) of the Act excludes Winger from the definition of a sales representative. Because Winger was not a "sales representative," the Contract was not a "sales representative agreement," and the Act, including its arbitration provision, does not apply to this dispute.

Winger argues that the fourth exclusion in subdivision 1(d) applies only to those who sell or offer goods to consumer end users. The Court chooses not to read this restriction into the unambiguous language of the statute.

Finally, this is not the type of situation where an overly-restrictive interpretation of the Act operates to frustrate its intent. *See, e.g., Cooperman v. R.G. Barry Corp.,* 1992 U.S.Dist. LEXIS 12411, at *17–18 (D.Minn. January 10, 1992). Every sale of Prochem products that Winger actually generated was made to an end user. More than sixty-nine percent of the leads Winger pursued on behalf of Prochem involved end users. On these facts, the Court finds that Winger falls within the fourth exclusion and was not a sales representative, as that term is defined in the Act.

Because the Act does not apply to this dispute, the American Arbitration Association has no jurisdiction over Winger's claims, and Robbins & Myers is entitled to a stay of the arbitration proceedings.

Accordingly, based upon a review of all the files, records, and proceedings,

**IT IS HEREBY ORDERED** That Robbins & Myers, Inc.'s motion for summary judgment is GRANTED, and the Court issues its declaration that the Minnesota Termination of Sales Representatives Act, Minn. Stat. 325E.37, does not apply to this dispute because Winger Associates, Inc. was not a "sales representative," as that term is defined in Minn.Stat. 325E.37, subd. 1(d);

**IT IS FURTHER ORDERED** That the arbitration proceeding between Robbins & Myers, Inc. and Winger Associates, Inc. currently pending before the American Arbitration Association is permanently STAYED because the American Arbitration Association has no jurisdiction over this dispute.